610 So.2d 1056 (1992)
Susan GUILLORY, Plaintiff-Appellant,
v.
Robert VENTRE, Defendant-Appellee.
No. 91-1225.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Writ Denied March 12, 1993.
*1057 Susan Theall, Opelousas.
Wm. A. Brinkhaus, Opelousas.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
*1058 KNOLL, Judge.
This appeal concerns an increase in child support payments under the guidelines of LSA-R.S. 9:315, et seq.
Susan Guillory (Guillory) and Robert Ventre (Ventre) were divorced in January of 1983. Guillory was granted the sole custody of Jill, two and one-half years of age at the time of the divorce, and Ventre was ordered to pay $200 monthly child support together with Jill's reasonable medical, dental, and pharmaceutical expenses.
On August 29, 1990, Guillory filed this rule to increase child support. Ventre answered, seeking an award of joint custody, expanded visitation rights, an amendment to his obligation to pay for Jill's medical expenses, and an order granting him the dependency exemption for income tax purposes.
The trial court increased the child support award owed by Ventre from $200 to $361.50, retroactive to January 1, 1991. In addition, the trial court awarded Ventre the dependency income tax exemption and ordered him to continue payment of insurance premiums for Jill's medical coverage.
Guillory appeals, contending that the trial court erred in: (1) its computation of her monthly income; (2) failing to consider the incomes of her new spouse as well as Ventre's; (3) failing to cast Ventre with an additional monthly expense for Jill's attendance at a parochial school; (4) deviating from the guidelines without just cause; (5) granting Ventre the dependency tax exemption; (6) casting Ventre only with responsibility for the cost of Jill's medical insurance coverage; and, (7) failing to make the judgment retroactive to the date of filing. We amend to increase the amount of monthly child support Ventre owes, retroactive to the date of filing, and order Guillory to sign the required dependency tax exemption forms. In all other respects, we affirm the trial court.

TRIAL COURT'S COMPUTATION OF GUILLORY'S MONTHLY INCOME
Guillory first contends that the trial court erred in using her potential monthly income rather than her actual monthly income in the calculation of her pro rata obligation for Jill's monthly child support. She argues that her actual monthly income should have been used because her physical condition did not permit her to work additional hours.
On appellate review, great weight must be accorded the trial court's determinations of fact. Where testimony conflicts, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed. Conner v. Conner, 594 So.2d 1039 (La.App. 3rd Cir.1992).
LSA-R.S. 9:315(6)(b) provides in pertinent part:
"(6) `Income' means:
* * * * * *
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party."
Guillory testified that she worked part-time at A & P, earning $3.80 per hour. The record shows that in 1989 she worked less than 20 hours per week, and that her 1989 federal income tax return showed that she had total earnings of $2,062.41. This equates to a monthly average of $171.87.
The trial court based its calculation of Guillory's child support contribution on a monthly income of $329.08. Even though the trial court did not state that it based its computation on Guillory's earning potential, it is obvious from the trial court's final determination that it considered that Guillory was able to work at least 20 hours per week at an hourly salary of $3.80.
*1059 Guillory asserts that her physical condition prevents her from working more than what the record shows she actually earned. We find that the record does not support her contention. Dr. Joseph Y. Bordelon, Jr., Guillory's treating physician, opined that although Guillory suffers from back pain, rapid heartbeat, asthma, bursitis, and nervousness, her physical condition should not prevent her from working 40 hours per week. Thus, it follows that Guillory's physical condition would not prohibit her from working up to 20 hours per week.
Guillory next contends that she may not be able to obtain medical insurance coverage with a new employer. Although this may be a legitimate concern, the record neither shows that Guillory attempted to secure additional or new employment nor that any potential employer would not have provided her with medical insurance coverage.
Therefore we cannot say that the trial court abused its discretion in considering Guillory's potential income in its computation of Guillory's pro rata share of Jill's child support.

SECOND SPOUSES' INCOMES
Guillory next contends that the trial court erred when it failed to consider the incomes of each parent's new spouse.
At the time that this rule was heard, LSA-R.S. 9:315(6)(c) provided: "The court may also consider as income the benefits a party derives from remarriage, expense-sharing, or other source."
Consideration of the income from remarriage and the accompanying expense-sharing falls within the trial court's discretion. Therefore we may not reverse the trial court's decision absent an abuse of discretion. Matherne v. Matherne, 571 So.2d 888 (La.App. 5th Cir.1990).
In Matherne, the Fourth Circuit found that the income earned by the second wife of Mr. Matherne increased his monthly household income by approximately 38%. The court held that the trial court erred in failing to consider this significant amount of additional income in calculating the amount of child support.
In the case sub judice, the trial court mentions the incomes of Jill's stepparents, and testimony was elicited which evidences their incomes. However, the trial court did not formulate the parents' respective child support obligations using their spouses' incomes. The trial court did not state any reasons for not including the spouses' incomes.
It is undisputed that in 1989 Guillory's present husband, Kent, earned $574.75 monthly. When combined with Guillory's potential income of $329.08, their total monthly income was $903.83.
Ventre's income was $3,016.93 monthly. His present wife, Deborah, earned a monthly salary of $1,922.04; thus, the Ventres' total monthly income was $4,938.97. We have arrived at the Ventres' monthly income by including as income those "expenses" shown on their affidavits for deductions used to fund their 401K pension plans and Robert Ventre's savings account. These items should be considered as income in the context of child support.
An income and expense sheet introduced into the record and the testimony of Deborah Ventre indicated that the Ventres shared an indeterminate amount of expenses. Similar testimony was adduced regarding the Guillory household.
We find that the trial court should have considered the earnings of the second spouse of the support obligor which are being used for some of the expenses incidental to the second family. See Lustig v. Lustig, 552 So.2d 516 (La.App. 2nd Cir. 1989). Therefore we find that the trial court abused its discretion when it excluded the income of Jill's parents' spouses.

COMPUTATION OF CHILD SUPPORT OBLIGATIONS
Since we have determined that the trial court's child support award is based on flawed income data, we must now recalculate the amount of child support Ventre *1060 owes. In reaching a proper award under the guidelines, we will address Guillory's contentions that Ventre should be responsible for private school tuition, that Ventre should be responsible for all of Jill's medical expenses, not just to provide medical insurance coverage, and that there should be no downward deviation from the amount of child support provided by the statutory guidelines.
Guillory contends that the trial court erred when it failed to include Jill's tuition at Opelousas Catholic School to Ventre's monthly child support obligation.
LSA-R.S. 9:315.6 provides that the trial court may add to the basic child support obligation any expenses for attending a special or private school to meet the particular educational needs of the child.
In Dempsey v. Dempsey, ___ So.2d ___ (La.App. 3rd Cir.1992), we held that the inclusion by the trial court of the expenses of a child's attendance at a private school shall not be reversed absent manifest error. In Dempsey, we found no error in the trial court's inclusion of a child's private school expenses because the child's mother presented evidence that the private school met the special educational needs of the child.
In the present case, unlike Dempsey, Jill's mother presented no evidence which showed that the parochial school she attended could satisfy any particular educational needs better than another school. Because the record is void of such evidence, we find that the trial court did not err in excluding the expenses of Jill's private school tuition from the basic child support obligation.
We now turn to the question of Ventre's obligation to pay for Jill's medical expenses. This issue must be resolved prior to our completion of the child support worksheet since we must determine whether Ventre will be entitled to a credit for monthly medical insurance premiums. See Norred v. Norred, 591 So.2d 396 (La.App. 2nd Cir.1991), writ denied, 592 So.2d 1319 (La.1992).
In the judgment of divorce, the trial court ordered Ventre to pay for all reasonable medical, dental and pharmaceutical expenses. In the present rule, Ventre sought a change in his obligation to pay for Jill's medical expenses. Although it did not elaborate on its decision in the written reasons for judgment, the trial court decided not to continue the manner in which Jill's medical expenses were paid under the divorce judgment; instead, it ordered Ventre to pay for the medical insurance premium to provide Jill with medical coverage. Guillory contends that Ventre should be responsible for all medical, dental and pharmaceutical expenses as provided in the judgment of divorce.
The record shows that after the 1983 divorce, Ventre voluntarily opened a charge account for Guillory to use in purchasing Jill's medication. He testified that he closed the account because he felt Guillory purchased an unreasonable amount of nonprescription drugs. Additionally, he stated that Guillory never requested generic prescriptive brands, although through his insurance plan, prescriptions cost $5 plus 10% unless a generic brand is requested.
Guillory admitted that she never submitted Jill's bills to her own insurance company although the policy seems to contain a coordination of benefits provision. Furthermore, Ventre testified that after Guillory had the physicians bill him for Jill's treatment, he had to recontact them to file insurance claims; this he found to be inconvenient.
Based on the record before us, we cannot say that the trial court abused its discretion in implementing a change in Ventre's obligation for Jill's medical expenses. The record evidences reasons which justify the trial court's action.
Having resolved the preliminary issues, we are now able to address the calculation of child support payments under the guidelines. Utilizing the income data detailed *1061 earlier in this opinion, we have prepared a child support obligation worksheet and have appended it to this opinion for reference (Appendix A). On the basis of this information, we have computed Ventre's recommended child support order as $653.63 (84.53% of $818.80, the basic child support established by the guidelines, less a credit of $38.50 for medical insurance premiums paid monthly).
Although we have reset the child support obligations of the parties, we find it necessary to examine the question of whether we should deviate downward as did the trial court. When the trial court examined the recommended child support order, it deviated downward, stating that Ventre's take home pay, his expenses, and the needs of Jill justified a decrease from the amount indicated by the guidelines. On appeal, Ventre proposes that the trial court's deviation downward was supported by the record.
After carefully examining the record, we find that a downward deviation is not supported. The Ventres' income is sufficient to meet the child support obligation recommended by the guidelines even when viewed in light of their monthly expenses. Moreover, the record is replete with instances which indicate Jill's needs. Thus, we find that Jill's needs are not so minimal as to overcome the presumption that the application of the guidelines is in her best interest.

DEPENDENCY TAX EXEMPTION
Guillory contends that the trial court erred in granting Ventre the dependency exemption for federal and state income tax purposes. She argues that the trial court was powerless to make such a determination, since she did not execute a written waiver disclaiming Jill as a dependent.
LSA-R.S. 9:315.13 provides:
"The amounts set forth in the schedule in R.S. 9:315.14 presume that the custodial or domiciliary party has the right to claim the federal and state tax dependency deductions and any earned income credit. However, the claiming of dependents for federal and state income tax purposes shall be as provided by the Internal Revenue Code."
26 U.S.C. 152(e) provides that the custodial parent is always entitled to the dependency exemption unless he executes a written waiver disclaiming the child as a dependent. This waiver must be attached to the noncustodial parent's tax return.
We find the First Circuit's resolution of this exact question in Boudreau v. Boudreau, 563 So.2d 1244 (La.App. 1st Cir. 1990), dispositive of the issue presented. In that opinion, the court found that legislative history indicated that trial courts retained jurisdiction to allocate the dependency exemptions to noncustodial parents. However, the decision went on to state that in order to effectuate the allocation, the trial court must order the custodial parent to sign the form disclaiming the child as a dependent. Accordingly, in the present case, we will amend the trial court's judgment to order Guillory to sign the required I.R.S. form declaring that she will not claim Jill as a dependent.
In further argument, Guillory briefly states that if Ventre is granted this tax deduction, his income should be increased by $2,100, the amount of the benefit. We disagree. As defined in LSA-R.S. 9:315, a tax deduction is not contemplated as "income."
For these reasons, we find that the trial court was not manifestly erroneous when it awarded the dependency exemption to Ventre.

RETROACTIVITY OF JUDGMENT
Lastly, Guillory urges that the trial court erred in making the judgment retroactive to January 1, 1991, rather than August 29, 1990.
LSA-R.S. 9:310 states the general rule that the trial court award should be granted retroactive to the date of filing. Only if *1062 the trial court finds good cause for not making the award retroactive, can it fix a different date for the award to become due.
In the present case, the trial court made no specific finding which would justify its decision not to make the award retroactive to the date of filing. Our careful review of the record further fails to point out any reason to vary from the general rule established in LSA-R.S. 9:310. Accordingly, we will amend the judgment to provide that the increase in child support due by Ventre be given retroactive effect to the date of filing, August 29, 1990. Hogan v. Hogan, 549 So.2d 267 (La.1989).
For the foregoing reasons, the judgment of the trial court is affirmed in part, amended in part, and recast as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Susan Guillory and against Robert Ventre increasing child support, and that Robert Ventre pay to Susan Guillory the sum of $653.63 per month as support for the minor child, Jill Ventre, retroactive to August 29, 1990.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Robert Ventre carry Jill Ventre on a policy of health insurance.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment granting Robert Ventre the dependency exemption for federal and state income tax purposes, and that Susan Guillory be ordered to sign the I.R.S. form declaring that she will not claim Jill Ventre as a dependent for income tax purposes.
In all other respects, the judgment of the trial court is affirmed. Costs of the trial court and appeal are assessed to Robert Ventre.
AFFIRMED AS AMENDED AND RENDERED.

WORKSHEETCHILD SUPPORT OBLIGATION
==========================================================================================================
 and
 Susan Guillory Robert Ventre
------------------------------------------------ -----------------------------------------------------
 Petitioner Respondent
==========================================================================================================
Jill Ventre Children Due of Birth Children Date of Birth
===========================================================================================================
===========================================================================================================
 Petitioner Respondent Combined
-----------------------------------------------------------------------------------------------------------
 1. MONTHLY GROSS INCOME $ $ //////////
 a. Minus preexisting child support payment - 904 - 4939 //////////
 b. Minus preexisting spousal support payment - - ///////////
 2. MONTHLY ADJUSTED GROSS INCOMES $ 904 $ 4939 $
 3. PERCENTAGE SHARE OF INCOME (Line 2. Each party's //////////
 income divided by Combined Income.) 15.47 % 84.53 % /////////
 4. BASIC CHILD SUPPORT OBLIGATION ////////////////////////// $
 (Apply line 2 Combined to Child Support Schedule.) ////////////////////////// 780.30
 a. Net Child Care Costs (Cost minus Federal Tax Credit.) //////////////////////// +
 b. Child's Health Insurance Premium Cost ///////////////////////// + 38.50
 c. Extraordinary Medical Expenses (Uninsured Only) /////////////////////////
 (Agreed to by parties or by order of the court) ///////////////////////// +
 d. Extraordinary Expenses (Agreed to by parties or by /////////////////////////
 order of court.) ///////////////////////// +
 e. Optional. Minus extraordinary adjustments /////////////////////////
 (Child's income if applicable.) ///////////////////////// +
 5. TOTAL CHILD SUPPORT OBLIGATION ///////////////////////// -
 (Add lines 4. 4a. 4b. 4c, and 4d; Subtract line 4e.) ///////////////////////// $ 818.80
 6. EACH PARTY'S CHILD SUPPORT OBLIGATION $ $ //////////
 (Multiply line 3 times line 5 for each parent.) 126.67 692.13 //////////
 7. RECOMMENDED CHILD SUPPORT ORDER $ $ ///////////
 (Bring down amount from line 6 for the non-custodial //////////
 or non-domiciliary party only. Leave custodial or domiciliary 692.13 //////////
 party column blank.) //////////
 Credit for insurance premium (-38.50)
 ________
 $653.63